**James I. MOSLEY**

v.

**Dawn Vernon YALETSKO, et al.**

**No. CIV.A. 02–8035.**

United States District Court,
E.D. Pennsylvania.

July 17, 2003.

James I. Mosley, F.D.C., Philadelphia, PA, Plaintiff, Pro Se.

Jean Y. Durbin, City of Philadelphia, Law Department, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

By way of the motion which is now before this Court, Defendant Dawn Vernon Yaletsko seeks the entry of summary judgment in her favor on all of the plaintiff's claims against her. For the reasons set forth below, the motion shall be granted.

### Factual Background

This case arose at approximately midnight on the night of July 4, 2001 when the defendant, a Philadelphia police officer, and her partner, Officer George Scott, observed Plaintiff sitting in his parked car on West Montgomery Avenue in Philadelphia.[1] Officer Scott, who was driving the

1. It should be noted that Defendant's version of events differs from the plaintiff's. Accord-

police cruiser, asked Mr. Mosley for his license and registration. When Plaintiff could not produce either, the officers exited their vehicle and Officer Scott told Plaintiff to get out of his car. Officer Scott then approached the driver's side of Plaintiff's car, grabbed him, pulled him out of his vehicle, patted him down, handcuffed him and placed him in the back of the patrol car.

Officer Yaletsko, in the meantime, approached the passenger side of Plaintiff's vehicle and, after checking the vehicle, found a gun. Officer Yaletsko then asked the plaintiff whether he had a permit for the firearm to which he replied that he did not. Plaintiff was subsequently given three citations for failure to have a driver's license, registration or insurance on his car and was charged with possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1). Although Plaintiff's statement that he did not have a permit for the gun was eventually suppressed on the grounds that Plaintiff had not been *Mirandized*, the weapon itself was not as it was in plain view. Mr. Mosley was ultimately convicted of the firearm possession charge and there is nothing on the record before us to suggest that this conviction has been overturned.

Plaintiff thereafter filed this lawsuit on November 21, 2002 pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated in that excessive force was used to effectuate his arrest and his car was unlawfully searched without his consent. Plaintiff has also recently been granted leave to include a claim that his Fifth Amendment rights were violated when Defendant asked him if he had a permit for the gun without first advising him of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

### Summary Judgment Standards

It has long been recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Under Fed.R.Civ.P. 56(c), summary judgment is properly rendered:

> "...if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Stated more succinctly, summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

---

ing to Officer Yaletsko's affidavit and testimony at the evidentiary hearing before Judge Bartle, when she and Officer Scott came upon Mr. Mosley, he was driving directly in front of them in a 1996 grey Plymouth Reliant with an expired registration sticker and he was pulled over for this reason. In considering a motion for summary judgment, however, all facts must be viewed and all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Oritani Savings & Loan Association v. Fidelity & Deposit Company of Maryland*, 989 F.2d 635, 638 (3rd Cir.1993); *Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125–126 (3rd Cir.1994); *Arnold Pontiac–GMC, Inc. v. General Motors Corp.*, 700 F.Supp. 838, 840 (W.D.Pa.1988). Accordingly, for purposes of this motion, we shall accept Plaintiff's version of the events of that night.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–32, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Oritani Savings & Loan Association v. Fidelity & Deposit Company of Maryland,* 989 F.2d 635, 638 (3rd Cir.1993); *Troy Chemical Corp. v. Teamsters Union Local No. 408,* 37 F.3d 123, 125–126 (3rd Cir.1994); *Arnold Pontiac–GMC, Inc. v. General Motors Corp.,* 700 F.Supp. 838, 840 (W.D.Pa.1988). An issue of material fact is said to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In *Celotex Corp. v. Catrett, supra,* the Supreme Court articulated the allocation of burdens between a moving and nonmoving party in a motion for summary judgment. Specifically the Court in that case held that the movant had the initial burden of showing the court the absence of a genuine issue of material fact, but that this did not require the movant to support the motion with affidavits or other materials that negated the opponent's claim. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The Court also held that Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). *See Also, Morgan v. Havir Manufacturing Co.,* 887 F.Supp. 759 (E.D.Pa.1994); *McGrath v. City of Philadelphia,* 864 F.Supp. 466, 472–473 (E.D.Pa.1994).

## Discussion

As noted above, Plaintiff claims that the defendant violated his constitutional rights under the Fourth and Fifth Amendments to be free from unreasonable searches and seizures and excessive force, as well as his rights under *Miranda v. Arizona.* In so doing, Plaintiff invokes 42 U.S.C. § 1983, which states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the district of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable....

The purpose of Section 1983 is to provide a civil cause of action to protect persons against the misuse of power possessed by virtue of state law and made possible because the defendant was cloaked with the authority of the state. *Del Signore v. McKeesport,* 680 F.Supp. 200, 203 (W.D.Pa.1988). Section 1983 does not create a cause of action in and of itself; it provides redress for certain violations of rights arising under the federal constitution or laws of the United States which are caused by persons acting under color of state law. *Lee v. Gateway Institute & Clinic, Inc.,* 732 F.Supp. 572, 575 (W.D.Pa. 1989), citing *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979).

To make out a claim under Section 1983, a plaintiff must demonstrate that the conduct of which he is complaining has been committed under color of state or territorial law and that it operated to deny him a right or rights secured by the Constitution and laws of the United States. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995), *cert. denied*, 516 U.S. 858, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995). The plaintiff must also establish that it was the acts of the defendant which caused the constitutional deprivation. *See: Rizzo v. Goode*, 423 U.S. 362, 370–371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976); *Duchesne v. Sugarman*, 566 F.2d 817, 831 (2d Cir. 1977).

The traditional definition of action under color of state law requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir.1998). To act "under color of" state law for § 1983 purposes does not necessarily require that the defendant be an officer of the State. Rather, it is enough that the defendant is a willful participant in joint action with the State or its agents. *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). A person may therefore be found to be a state actor when (1) he is a state official, (2) he has acted together with or has obtained significant aid from state officials, or (3) his conduct is, by its nature, chargeable to the state. *Angelico v. Lehigh Valley Hospital*, 184 F.3d 268, 277 (3d Cir.1999). As there is no dispute that the defendant, as a Philadelphia police officer, is a state actor who was at all times acting under color of state law, we now consider each of the plaintiff's individual claims.

## A. Excessive Force Claim.

Turning first to Plaintiff's excessive force claim, we note that the proper test for evaluating such a claim is one of objective reasonableness. *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872–73, 104 L.Ed.2d 443 (1989). This test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Sharrar v. Felsing*, 128 F.3d 810, 821 (3d Cir.1997), quoting *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. Indeed, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id. See Also: Mellott v. Heemer*, 161 F.3d 117, 122 (3d Cir.1998).

In this case as the plaintiff himself admits, Officer Vernon–Yaletsko never touched him. To be sure, it was Officer Scott who removed the plaintiff from his vehicle, handcuffed him and placed in the back of the police vehicle. Mr. Mosley has not filed suit against Officer Scott and has testified that he has no complaints about Officer Scott or the manner in which he was treated by him. Rather, Plaintiff asserts that his excessive force claim stems from Officer Yaletsko's inquiry into whether or not he had a permit for the gun before reading him his *Miranda* rights. As it is thus clear from this record that Officer Yaletsko used absolutely no force against Plaintiff, she is entitled to the entry of judgment in her favor as a matter of law on this claim.

## B. Fifth Amendment Claim.

 As noted, Plaintiff is also seeking redress under Section 1983 for Defendant's interrogation of him prior to his having been read his *Miranda* rights.[2] However, rules designed to safeguard a constitutional right do not extend the scope of the constitutional right itself just as violations of the judicially crafted prophylactic rules do not violate the constitutional rights of any person. *Chavez v. Martinez,* —— U.S. ——, 123 S.Ct. 1994, 2004, 155 L.Ed.2d 984 (2003); *Giuffre v. Bissell,* 31 F.3d 1241, 1256 (3d Cir.1994). Thus, where a suspect's statements are suppressed because he was not properly given his *Miranda* warnings, he was not compelled to be a witness against himself in a criminal proceeding, his Fifth Amendment rights were not violated, and he has no cause of action under § 1983. *See, Chavez,* 123 S.Ct. at 2001. Accordingly, we conclude that the defendant is also entitled to judgment in her favor as a matter of law on Plaintiff's Fifth Amendment claim.

## C. Unlawful Search Claim.

 Mr. Mosley also seeks damages for the allegedly unlawful search of his vehicle, which resulted in the seizure of a .25 caliber handgun and his subsequent conviction for possession of a firearm by a convicted felon. We find that Officer Yaletsko is entitled to judgment on this claim as well.

 It is axiomatic that under the Fourth Amendment,

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized..."

The Supreme Court has interpreted the Fourth Amendment to require adherence to judicial processes and has held that searches conducted outside the judicial process, without prior approval by a judge or magistrate are *per se* unreasonable. *See Generally, Katz v. United States,* 389 U.S. 347, 351–352, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). There are, however, certain exceptions to this general rule such as where a motor vehicle is involved. *Chambers v. Maroney,* 399 U.S. 42, 48, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419 (1970). ("In terms of the circumstances justifying a warrantless search, the Court has long distinguished between an automobile and a home or office.") Thus, so long as probable cause to search exists, a vehicle, because of its movable nature, may be the subject of a warrantless search. *Maryland v. Dyson,* 527 U.S. 465, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442, 467 (1999); *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996); *Chambers,* 399 U.S. at 52–53, 90 S.Ct. at 1981; *United States v. Burton,* 288 F.3d 91, 100 (3d Cir.2002).

 Additionally and in recognition that roadside encounters between police and suspects may be especially hazardous, the Supreme Court has further held that search of the passenger compartment of an automobile, limited to those places where a weapon may be placed or hidden, is permissible if the officer has a reasonable belief based on specific and articulable facts that a driver may be armed and dangerous. *See, Michigan v. Long,* 463

---

**2.** Although Plaintiff has yet to formally file an amended pleading raising this claim, this Court did recently give him leave to do so given that it appears to be the basis for all of his claims in this matter. Accordingly, in disposing of this motion, we consider the viability of this, Fifth Amendment claim, as well.

U.S. 1032, 1049, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983). Items of contraband may also be lawfully seized without a warrant where they are in "plain view" to a police officer who is legally in a position from which he can see the object and where the incriminating character of the item is immediately apparent. *Minnesota v. Dickerson,* 508 U.S. 366, 374–75, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993); *Horton v. California,* 496 U.S. 128, 133, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112 (1990).

In this case, the record reflects that as Officer Yaletsko approached the passenger side door, she observed Plaintiff slip a gun between the bench and back of the front seat of the car he was driving. In view of the authority recited above, we find that Officer Yaletsko's seizure of this weapon was appropriate and lawfully within the confines of the Fourth Amendment as both seizure of contraband within plain view and as a search incident to a roadside stop conducted for the sole purpose of ensuring the officers' safety.[3] Given that Mr. Mosley's civil rights were not violated by this search of his vehicle, his § 1983 cause of action on this basis also fails.

### D. False Arrest Claim.

Although not entirely clear, Plaintiff's complaint may also arguably be interpreted to encompass a claim that his arrest was improper and in violation of the Fourth Amendment.[4]

However, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus...A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck v. Humphrey,* 512 U.S. 477, 486–487, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994). Here, Plaintiff does not aver and there is no evidence to suggest, that his conviction has been overturned or otherwise declared invalid. Accordingly, to the extent that he is challenging the constitutionality of his arrest and conviction by this lawsuit, this claim also fails and judgment must be entered in favor of the defendant as a matter of law.

For all of the foregoing reasons, we shall grant the defendant's motion for summary judgment and enter judgment in her favor as a matter of law on all of the claims set forth in the plaintiff's complaint.[5] An order follows.

---

3. Alternatively, we believe that as the issue of the propriety of Officer Yaletsko's seizure of the gun from Plaintiff's vehicle has been found to have been lawful by Judge Bartle in Plaintiff's underlying criminal action, we are bound by Judge Bartle's decision under the doctrine of collateral estoppel. *See Generally: Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Venuto v. Witco Corp.,* 117 F.3d 754, 758 (3d Cir.1997).

4. Specifically, the complaint avers "[o]n July 4, 2001, when plaintiff was sitting in his parked car on the 1700 N. 23rd St. in Philadelphia, PA, Defendant Dawn Vernon Yaletsko approached Plaintiff for no apparent reason and excessive force was used to forcibly remove plaintiff from his car which was searched by defendant without his consent."

5. In light of our findings, we see no need to address the defendant's claim that she is entitled to qualified immunity from this suit.